**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

ARMY AVIATION HERITAGE
FOUNDATION AND MUSEUM, INC.,
A Georgia non-profit corporation,

        Plaintiff,

v.                                    Case No. 3:03cv554-RS-MD

ROGER BUIS, PAULINE BUIS, d/b/a
OTTO AIRSHOWS, INC., and d/b/a
OTTO THE CLOWN,

        Defendants.

_____/

## ORDER

       Before me are (1) Plaintiff's requests for damages following a bench trial on that issue; (2) Plaintiff's Motion for Attorney's Fees and Nontaxable Expenses (Doc. 258); and (3) Plaintiff's Motion to Strike Financial Statements of Defendants (Doc. 287).

## I.  Background

       Plaintiff Army Aviation Heritage Foundation and Museum, Inc. ("AAHF") brought this diversity action against Defendants Roger and Pauline Buis and their business, Otto Airshows, Inc. d/b/a Otto the Clown, alleging that Defendants had made defamatory statements about AAHF and had violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. §§ 501.201 et. seq.).  District Judge Vinson granted AAHF's motion for partial summary judgment, holding Defendants liable on both the defamation and FDUTPA claims (Doc. 191).[1]  Judge Vinson's order recites the factual background in this case.  See Doc. 191:2-6.

---

       [1]I conducted my own review of the record and the applicable law, and I concur with Judge Vinson's findings.

A bench trial was held before me, the sole issue for my consideration involving the amount of damages to which AAHF is entitled.  Following the bench trial, the parties filed post-trial briefs (Docs. 278, 279 & 280).  Defendants also filed a financial statement of assets and liabilities (Doc. 281).

AAHF claims entitlement to general damages of at least $100,000; special damages in the amount of $80,000; punitive damages of at least $80,000; and attorney's fees and nontaxable expenses (Doc. 278:2, 10; Doc. 258.).  AAHF also moves to strike the financial statements of Defendants (Doc. 287.)

## II.  Analysis

### A. General and Special Damages

Any person having suffered injury from defamation is entitled to recover damages.  Florida law recognizes two categories of compensatory damages for defamation: general and special.  Bobenhausen v. Cassat Ave. Mobile Homes, Inc., 344 So. 2d 279, 281 (Fla. 1st DCA 1977).

> General damages are those which the law presumes must naturally, proximately and necessarily result from publication of the libel or slander.  They are allowable whenever the immediate result is to impair the plaintiff's reputation, although no actual pecuniary loss is demonstrated. 20 Fla.Jur. Libel and Slander sections 6, 88.

Id.  Special damages, on the other hand, "do not result by implication of law," and "it is necessary for a plaintiff to show his special damages proximately resulted from the defamation." Bobenhausen, 344 So. 2d at 281 (citation omitted).

Compensatory damages are not limited to out-of-pocket loss.  Gertz v. Welch, Inc., 418 U.S. 323, 349, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974).  The injured party may recover damages resulting from impaired reputation and standing in the community, humiliation, mental anguish, and suffering.  Id.

"Words which are actionable in themselves, or per se, necessarily import general damages and need not be pleaded or proved but are conclusively presumed to result." Bobenhausen, 344 So. 2d at 281.  A false and unprivileged publication which injures a

corporation, prejudices its ability to conduct its trade or business, deters third persons from dealing with it, assails its management, or impugns its method of doing business is actionable per se. See, e.g., McIver v. Tallahassee Democrat, Inc., 489 So. 2d 793, 794 (Fla. 1st DCA 1986) (citation omitted); Diplomat Electric, Inc. v. Westinghouse Electric Supply Co., 378 F.2d 377, 383 (5th Cir. 1967).

Judge Vinson's order granting partial summary judgment in Plaintiff's favor identified the following publications by Defendants as actionable per se[2]:

1.  Letter dated November 17, 2003, mailed to Federal Aviation Administration ("FAA") and circulated to various individuals within the air show community containing:

    a.  False statement about AAHF's maintenance program, or lack thereof;

    b.  Suggestion that AAHF was using unapproved military surplus parts;

    c.  Charge that AAHF had removed several members for questioning its maintenance practices.

2.  Letter dated November 7, 2003, to FAA, which stated that AAHF was illegally operating or flying aircraft.

3.  Pauline Buis's email to Aircraft Owners and Pilots Association ("AOPA"), which alleged that "much of the information in the [AAHF's] exemption request is not entirely true and or is misrepresented facts."

4.  "Oral statements made to several individuals concerning a wide-ranging number of allegations" including the Buis's "statements to John Cudahy and Martha Farmer that AAHF aircraft were being maintained incorrectly, that the pilots were possibly not trained, and that AAHF was using non-yellow-tagged parts." (Doc. 191:8-11.)

The law provides little guidance in determining the amount of compensatory damages to which a defamed party is entitled.  "There is no exact standard for fixing the compensation to be awarded on account of such elements of damage.  Any award

---

[2]The order states that "[s]ince each of these accusations plainly imputes either dishonesty or conduct and practices incompatible with the proper exercise of AAHF's business operations, the statements are actionable per se, and plaintiff need not prove special damages."  (Doc. 191:9-10) (citing White v. Fletcher, 90 So.2d 129 (Fla. 1956)).

should be fair and just in the light of the evidence." Firestone v. Time, Inc., 305 So. 2d 172, 177 (Fla. 1974), vacated and remanded on other grounds, Time, Inc. v. Firestone, 424 U.S. 448, 460-461, 96 S. Ct. 958, 47 L. Ed. 2d 154 (1976) (approving the quoted language above from the trial court's jury instructions); see also Fla. Std. Jury Instr. (Civ.) 4.4a.  The law also requires that "the verdict and judgment bear a reasonable relation to the philosophy and general trend of prior decisions." Johnson v. United States, 780 F.2d 902, 907 (11th Cir. 1986).  Further, "[o]f course, . . . all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury." Gertz, 418 U.S. at 349, 94 S. Ct. 2997, 41 L. Ed. 2d 789.

Here, Plaintiff's requests for general damages in the amount of at least $100,000 and special damages in the amount of $80,000 are ambitious.  AAHF has failed to demonstrate any injury to its reputation, decreased standing in the community, impairment in its ability to conduct its trade or business, loss in membership, or that the defamatory statements deterred anyone from conducting business with it.  To the extent that such impairments are presumed by law, I find that the evidence produced at trial sufficiently rebuts those presumptions.

The President of AAHF, Michael Brady, testified at trial that AAHF's reputation for safety is of paramount importance in securing business in the air show industry and in maintaining its relationship with the FAA.  However, Brady conceded that during the Brady-Buis battle, AAHF suffered no lost business nor was any adverse action ultimately taken by the FAA against AAHF.  In fact, the evidence showed that Brady successfully labored to protect AAHF's reputation after publication of the defamatory statements and that the close-knit air show community was aware of the Brady-Buis battle, understood that Plaintiff and Defendants were business competitors, and perceived the defamatory statements with skepticism.  In particular, John Cudahy, President of the International Council of Air Shows ("ICAS"), a trade organization in the air show industry, stated that although he was initially "concerned" about the false statements and inquired about them, he did not believe them.  Further, Brady conceded at trial that membership in his organization has not declined nor has he had difficulty

acquiring parts for his aircraft from the government.

At trial, Brady admitted that if the FAA had cause to believe that AAHF was conducting its operations in an unsafe manner, it would "pull your license, ground your craft immediately."  Notably, the FAA investigated AAHF and took no adverse action against it.  Instead, after efforts by AAHF to demonstrate its entitlement to an exemption, the FAA renewed the exemption without lapse.

Martha Farmer, an investigator for the FAA assigned to AAHF, stated that she was aware of the "issues" between AAHF and Defendants and receives calls "all the time from disgruntled people."  After an unannounced visit to AAHF's facilities, Farmer's investigations uncovered no safety violations or wrongdoing by AAHF.

AAHF is an ongoing, successful business enterprise, and Brady has not alleged loss of goodwill or profits.  The evidence wholly fails to substantiate any reputational damage to AAHF.  Even if AAHF's standing in the community has been compromised, I find that such damage has not resulted from any statements or actions by Defendants; rather, such injury is largely the consequence of AAHF's decision to bring this lengthy litigation against a defunct business competitor, thereby permitting the statements complained of to traverse the confines of the close-knit air show community and permeate the general public by means of the public records of this Court.

In contrast, it is Defendants who have suffered most from this dispute, although they bear responsibility for that suffering.  When the FAA granted its exemption to AAHF, it also awarded AAHF an unfair competitive advantage over Defendants' private business.  Defendants' business, once a potential competitor of AAHF, is no longer in business.  Although Defendants campaigned vigorously to overturn the exemption, they did not fight fairly and instead overreached.  Had Defendants simply confined their communications to attacking the purpose of the exemption and its applicability to AAHF, even if such opinions were untenable, this Court's determination of Defendants' liability may well have been different.  Instead, Defendants' efforts to overturn the exemption were hyperbolic.  Consistent with such conduct, Defendants' demeanor during the course of this litigation was marked by impassioned pleas and an inability or refusal to confine their arguments to the relevant issues.

On these facts, I cannot reasonably find that AAHF's standing in the community has been compromised as the "natural, proximate, and necessary" result of the defamatory statements.  In fact, I find that Plaintiff has benefitted from this litigation inasmuch as a potential competitor of Plaintiff - Otto the Clown - is no longer in business.  The cases cited in Plaintiff's Post-Trial Brief (Doc. 278) in which substantial damages were awarded to plaintiffs are unpersuasive.  Those cases involve personal attacks, accusations of criminal conduct, and unrebuttable presumptions of clear reputational damage to the complaining parties.[3]  Here, the statements found to be defamatory do not rise to that level.  Neither Brady nor AAHF were labeled adulterers, thieves, criminals, or the subjects of federal criminal investigations.  The Buis's campaign was an expression of their dissatisfaction with an FAA exemption which granted unfair competitive advantages to a nonprofit organization to the detriment of their private business.

---

[3]See Firestone v. Time, Inc., 305 So.2d 172 (Fla. 1974), vacated and remanded, Time, Inc. v. Firestone, 424 U.S. 448, 96 So. Ct. 958, 47 L. Ed. 2d 154 (1976) (false accusation of adultery); Litman v. Mass. Mut. Life Ins. Co., 739 F.2d 1549 (11th Cir. 1984) (false statements by employer that agent was terminated because he had "serious financial problems" or was a "bad" or "lousy" businessman); Cadieux v. Ocala Breeder Sales Co., Inc., Docket No. 5:04-cv-355-oc-10GRJ (M.D. Fla. 2006) (employer terminated employee and published false accusations of theft by employee); India v. Cassell, Docket No. 00-019023 (11) (Fla. Cir. Ct. 2005) (employer disseminated false statements that injured employee was fraudulently obtaining workers' compensation benefits and that employee would be arrested); A-Z Precast Concrete Prods., Inc. v. Kennedy, Case No. 00004908CI Sec. 013 (Fla. Cir. Ct. 2003), affirmed without opinion, Kennedy v. A-Z Precast Concrete Prods., Inc., 872 So. 2d 907 (Fla. 2d DCA 2004) (defaming party telephoned competitor's customers and falsely stated that competitor had stolen property, had failed to obtain state certification, had inadequate financing to complete customer contracts, was untrustworthy, and was a "common thief"); LRX, Inc. v. Horizon Assoc. Joint Venture, Inc., Docket No. 95-6588 (Fla. Cir. Ct. 2000), reversed, LRX, Inc. v. Horizon Joint Venture, Inc., 842 So. 2d 881 (Fla. 4th DCA 2003), affirmed after new trial, LRX, Inc. v. Horizon Assoc. Joint Venture, Inc., 922 So. 2d 984 (Fla. 4th DCA 2005) (false statements distributed to clients and business partners that complaining parties were engaging in the unauthorized practice of law, were dishonest and unethical, and that defendants were going to "put Plaintiffs out of business"); Fleming v. Gadsden County Times, Case No. 83-320-CA (Fla. Cir. Ct. 1988) (newspaper published article linking the plaintiff and his company to a federal criminal investigation).

I do find, however, that AAHF is entitled to nominal damages.  "Nominal damages are awarded to vindicate a right where a wrong is established but no damage is proved."  Fla. Std. Jury Instr. (Civ.) MI 4.4f.  Here, although AAHF has failed to demonstrate damages, Defendants have violated its rights and have caused AAHF to mitigate potential harm to its reputation during the relevant period.[4]

In determining the appropriate amount of nominal damages, I find particularly persuasive the Florida legislature's statutory codification of a civil penalty for willful violations of FDUTPA in actions brought by the "enforcing authority."[5]  See § Fla. Stat. 501.2075.  Section 501.2075 is entitled "civil penalty" and states, in relevant part, that

> Except as provided in s. 501.2077, any person, firm, corporation, association, or entity, or any agent or employee of the foregoing, who is willfully using, or has willfully used, a method, act, or practice declared unlawful under s. 501.204, or who is willfully violating any of the rules of the department adopted under this part, is liable for a civil penalty of not more than $10,000 for each such violation.

Fla. Stat. § 501.2075.  Section 501.204 declares unlawful "[u]nfair methods of

_____

[4]Plaintiff stated in its Post-Trial Brief only generally and without producing specific evidence that

> It should also be noted that the AAHF also incurred damages related to the time, effort and energy of its president, Michael Brady, in combating the defamation.  The testimony was that he spent many days and hours dealing with the FAA, John Cudahy, President of the International Council of Air Shows, air show operators and AAHF members in dealing with the falsehoods spread by the Defendants.

Plaintiff then acknowledged that

> This effort has a cost and constitutes an element of special damages, even if the amount is determined to be nominal.

(Doc. 278:9.)

[5]"Enforcing authority" means the office of the state attorney or the Department of Legal Affairs.  See Fla. Stat. § 501.203(2).

competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

Plaintiff's FDUTPA claim arises out of the identical transactions and occurrences that form the basis for Plaintiff's claim of common law defamation.  In particular, Judge Vinson found that the defamatory statements of Defendants also violated FDUTPA's prohibition on "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices."  Addressing Defendants' concerns about this overlap in causes of action, Judge Vinson stated that:

> Defendants contend that such an interpretation of [F]DUTPA would turn every defamation into a[n] [F]DUTPA violation.  This is simply not the case.  Even if [F]DUTPA were held to apply to every defamation involving business matters, it would still encompass only a small fraction of defamatory statements.  True, there is some overlap between the two causes of action, but the mere fact that conduct gives rise to more than one type of claim does not prevent it from being a[n] [F]DUTPA violation.  See, e.g., Urling v. Helms Exterminators, 468 So. 2d 451 (Fla. 1st DCA 1985) (holding that [F]DUTPA embraces a claim for legal malpractice).

(Doc. 191:16-17.)

Judge Vinson's opinion thus acknowledges that the statements found to be defamatory also constituted violations of FDUTPA, while also recognizing that concurrent violations of both causes of action will not necessarily be found in every case.  That such overlap does exist in this case, however, provides compelling justification to consider the civil penalty codified in FDUTPA as persuasive when assessing Plaintiff's nominal damages, to the extent that the penalty accurately captures such damages.

In this case, I find that the penalty is a reasonable guage of Plaintiff's nominal damages.  The penalty caps liability at $10,000 but requires no minimum assessment.  Thus, a defendant could be assessed a penalty ranging from nothing at all to a penalty in the amount of $10,000.

FDUTPA was enacted to promote the following policies:

(1) To simply, clarify, and modernize the law governing . . .

> unfair methods of competition and unconscionable, deceptive, and unfair trade practices.
>
> (2) To protect . . . legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

Fla. Stat. § 501.202.  In this case, the defamatory statements were found by Judge Vinson to impugn AAHF's "business operations" in order to secure "a business advantage" by Defendants.  Thus, I find that FDUTPA adequately embraces the defamatory statements, and its civil penalty is of greater relevance had no such overlap existed.

Further, although I recognize that the civil penalty in § 501.2075 is applicable only to actions commenced by the "enforcing authority" and not to actions commenced by private parties, I nevertheless find that the legislature's codification of a specific monetary range of not more than $10,000 for each violation evinces the clearest and most persuasive indication of the amount of award deemed just, reasonable, and appropriate by the legislature.  I find this to be particularly true where, as here, "no exact standard" exists "for fixing the compensation to be awarded," and the purpose of compensation is to vindicate Plaintiff's intangible injuries, including the violations of its rights and the mitigatory efforts required to protect its reputation.

In determining the specific monetary award to which Plaintiff is entitled and whether the defamatory statements are more properly characterized as single or multiple violations under FDUTPA's civil penalty scheme, I am guided by the United States Supreme Court's construction of the federal civil penalty counterpart to FDUTPA, 15 U.S.C. § 45(l), in United States v. ITT Continental Banking Co., 420 U.S. 223, 95 S. Ct. 926, 43 L. Ed. 2d 148 (1975).[6]  In that case, the Supreme Court stated that:

---

[6]The Florida legislature intended that "due consideration and great weight . . . be given to the interpretations of the Federal Trade Commission and the federal courts" when interpreting FDUTPA.  Fla. Stat. § 501.204(2). I also note that the federal counterpart to FDUTPA contains a civil penalty provision assessing not more than $10,000 for each violation in a civil action commenced by the Federal Trade

> The statute[] prescribes no minimum penalty, and the District Court has discretion to determine the amount of the penalty for each violation whether the transactions are construed as single or as continuing violations . . . and the trial judge's determination would prevail in the absence of an abuse of discretion.

United States v. ITT Continental Banking Co., 420 U.S. 223, 228, 95 S. Ct. 926, 931, 43 L. Ed. 2d 148, 157 n. 6 (1975).  See also United States v. Ancorp Nat'l Servs., Inc., 516 F.2d 198, 202 (2d Cir. 1975) ("Determination of the amount of penalties is committed to the informed discretion of the district judge.").

In this case, I find it appropriate to award Plaintiff nominal damages in the amount of $10,000 for each violation because of the per se nature of the violations.  The violations and damages awards are as follows:

**(1) First Violation:**  Letters written to FAA
**Award:**          $10,000

I find it proper to construe the November 7, 2003, and November 17, 2003, letters written by Defendants to the FAA as a single violation.  The letters were written to the same federal agency rather than to multiple individuals, were written with the same purpose to overturn the exemption, and were written just ten days apart.

Further, I am not justified in treating the letter dated November 7, 2003, as a separate violation because the false information contained in that letter resulted from Defendants' reliance on inaccurate information that was posted on the FAA's website about the licenses granted AAHF.  The erroneous information led Defendants to believe, mistakenly, that AAHF was operating its aircraft illegally.  In a letter to Defendants by the FAA, the FAA admitted that the information on its website was outdated and that it had erred in failing to update its records.

I also find that because Defendants are not attorneys, a reasonable person reading the letter dated November 7, 2003, would question the ability of Defendants to determine the legality or illegality of *any* matter, even as it pertains to flying aircraft.  Thus, the letter dated November 7, 2003, although found to be defamatory by Judge

Commission.  15 U.S.C. § 45(l) & (m)(1)(A).

Vinson, clearly violated Plaintiff's rights to a lesser extent and required less mitigatory efforts than other violations.

However, Judge Vinson found, and I agree, that the statements contained in the letter dated November 17, 2003, were more problematic.  The false allegations of improper maintenance, use of parts, and removal of members contained in that letter "impute[d] either dishonesty or conduct and practices incompatible with the proper exercise of AAHF's business operations."  I therefore find that AAHF is entitled to a nominal damages award in the amount of $10,000 for this violation.

**(2) Second Violation:** Circulation of the letter dated November 17, 2003, to members of the air show community
   **Award:**         $10,000

Defendants committed an additional transgression when they circulated the letter dated November 17, 2003, to others within the air show community.  Although the evidence is unclear as to (1) whether the circulated letter was an identical version of the letter that was sent to the FAA and (2) to which individuals the letter was ultimately distributed, Judge Vinson found that Defendants republished the letter dated November 17, 2003, in similar form, by circulating it to other members of the air show community.  I therefore find that Plaintiff is entitled to a nominal damages award in the amount of $10,000 for this transgression.

**(3) Third Violation:**  Pauline Buis's email to Aircraft Owners and Pilots Association ("AOPA")
   **Award:**         $10,000

Judge Vinson found that Pauline Buis sent an email to AOPA, an organization of aircraft owners and pilots representing thousands of members.  The email alleged that AAHF's exemption renewal request contained many untruths and misrepresented facts.  Ms. Buis's email requested that AOPA join her in opposing AAHF's exemption renewal request.

The distribution of this email to potential business partners and associates of AAHF which falsely accused it of engaging in deceitful acts risked impairment to the business reputation of AAHF.  I find that AAHF is entitled to nominal damages in the amount of $10,000 for this violation.

**(4) Fourth Violation:** Defamatory oral statements made to others within the air show community
**Award:**               $10,000

Finally, Judge Vinson found that Defendants made defamatory oral statements to various members of the air show community.  Because the nature and extent of such communications is uncertain but the risk of injury conclusive, I find it appropriate to construe the slanderous statements made by Defendants as a single violation and to award AAHF nominal damages in the amount of $10,000.


**B. Claim For Attorneys' Fees In Defending Entitlement to FAA Exemption**

AAHF claims entitlement to approximately $86,000 in attorneys' fees as special damages incurred in defending its entitlement to the FAA exemption.  I find AAHF's request for reimbursement of these fees to be without merit.

A plaintiff is entitled to special damages arising from defamation only if he can show that "his special damages proximately resulted from the defamation." Bobenhausen, 344 So. 2d at 281 (citation omitted).  Here, the evidence fails to prove that the defamatory statements infected FAA's initial decision to deny AAHF's petition requesting renewal of the exemption.

In a letter to Brady dated March 15, 2004, the FAA set forth the criteria that AAHF must satisfy before entitling it to an exemption.  One criterion required that the aircraft "[b]e a replica of the vintage that is so unique as to warrant further consideration."  The FAA determined, however, that the UH-1H (Huey) helicopter, the aircraft for which AAHF obtained the initial exemption and sought renewal, is not "a replica of the vintage that is so unique as to warrant further consideration."  In particular, the FAA stated that

> The aircraft [is] similar in construction and design to a type-certificated product with a standard airworthiness certificate. Therefore, the FAA does not intend to grant exemptions of this nature in the future, because it is possible to experience flight in a similar aircraft that does not require an exemption.
>
> Surplus, military turbine-powered aircraft (OH-58/Bell 206, UH-1/Bell 204/205/Huey-II) remain in production or are easily

> available in the current international market.  The availability of these aircraft is indicative of an increasing market and thus undermines any argument that this aircraft is 'unique.' Therefore, rides could be provided for compensation or hire in an aircraft certificated in the standard category that closely resembles the military version as to be virtually indistinguishable.  Furthermore, the use of turbine-powered aircraft is not considered part of the heritage associated with WWII vintage aircraft.

(Def.'s Ex. 19:2-3.)

The FAA's initial decision to deny AAHF's petition to renew its exemption was therefore based on policy considerations; the decision was not based on the defamatory statements which called into question the safety, parts, maintenance, and integrity of AAHF.  Significantly, the FAA noted that "[t]he decision to deny the petition is based solely on the policy criteria outlined above and is not the result of any safety deficiency in the petitioner's operations."  (Def.'s Ex. 19:2-3) (emphases added.)

Although AAHF contends that the defamatory statements contaminated the FAA's decision-making process, the communications from AAHF's counsel in the exemption renewal proceeding suggest otherwise.  In defending AAHF's entitlement to the exemption, the firm representing AAHF in that proceeding urged only that the FAA reconsider its finding that AAHF's aircraft was not "unique."  Counsel did not address the defamatory statements.  Further, that the FAA ultimately renewed the exemption strongly suggests that the FAA, consistent with the statements in its letter dated March 15, 2004, gave no weight to the defamatory statements when it initially denied the petition for exemption.  To the extent that AAHF maintains its contention that the defamatory statements adversely influenced the FAA, causing it to deny the exemption, I find such a charge to be far too speculative and controverted by the weight of the evidence, including the FAA's own statement concerning the information it considered in its decision-making process, as to be untenable.

Instead, the attorneys' fees incurred by AAHF in defending its right to the exemption are more properly characterized as "costs of doing business."  AAHF desired an exemption to remain in business; AAHF hired counsel and was awarded with an

exemption.  In any event, AAHF is not entitled to attorneys' fees arising from the exemption renewal proceeding because the evidence fails to substantiate that the defamatory statements were the proximate cause of the FAA's initial decision to non-renew the exemption.

## C.  Punitive Damages

AAHF also requests punitive damages in the amount of at least $80,000.  The purpose of punitive damages is not to compensate the injured party but rather to punish the wrongdoer and to deter others from engaging in similar conduct.  Ross v. Gore, 48 So. 2d 412, 414 (Fla. 1950) (citation omitted); Brown v. Fawcett Publ'ns, Inc., 196 So. 2d 465, 470 (Fla. 2d DCA 1967).  Punitive damages are designed to punish conduct that is malicious, wanton, outrageous, and of moral turpitude.  Bobenhausen, 344 So. 2d at 283.

In Florida, an award of punitive damages is not authorized from implied malice alone; if the character of the publication does not demonstrate "common law" malice, punitive damages are not warranted.  Hunt v. Liberty Lobby, 720 F.2d 631, 650 (11th Cir. 1983).  "Common law" malice focuses on the defendant's feelings toward the plaintiff, unlike "express" malice which concerns the defendant's knowledge of the truth or falsity of a publication.  Id. (citing Cantrell v. Forest City Publ'g Co., 419 U.S. 245, 95 S. Ct. 465, 42 L. Ed. 2d 419 (1974)).  In Liberty Lobby, the Eleventh Circuit explained that

> Our research confirms that Florida is one of those states that requires a form of common law malice to sustain an award for punitive damages.  The Florida courts have concluded that 'In order to award punitive damages in a libel action, ill will, hostility or an evil intention to defame and injure, must be present.' Matthews v. Deland State Bank, 334 So. 2d 164, 166 (Fla. 1st DCA 1976). See also, Brown v. Fawcett Publ'ns, Inc., 196 So. 2d 465, 472-73 (Fla. 2d DCA 1967), cert. denied, 201 So. 2d 557 (Fla. 1967). While the Florida law is not without ambiguity, it appears that proof of this type of malice may come from two sources: the publication itself and extrinsic evidence concerning the defendant's feelings toward the plaintiff.  Id. Therefore, a jury instruction on the common law malice

> necessary to support punitive damages should focus the jury's
> attention on the defendant's feelings of ill will toward the
> plaintiff, considering 'the evidence produced at trial' and the
> 'character of the publication itself.'  Matthews, 334 So. 2d at
> 166.

Liberty Lobby, 720 F.2d at 650-51.  See also Bobenhausen, 344 So. 2d at 282 (plaintiff

may recover punitive damages "upon a showing that the publication was made for

malice or ill-will toward him.").

     Here, even taking into account the per se nature of the defamation and the

presumption of malice, I find that AAHF is not entitled to punitive damages. Defendants'

communications were devoid of common law malice in the form of ill will, hostility, or evil

intent; rather, Defendants were primarily concerned with the unfair competitive

advantage accruing to AAHF from the FAA exemption and the threat that the exemption

posed to Defendants' business.

     This finding is supported by the evidence produced at trial and the character of

the publications.  The central purpose of Defendants' publications was to question the

validity of the exemption and petition against it.  For example, the letter dated November

17, 2003, addressed the FAA's stated purpose of the exemption and attempted to

persuade the FAA that granting the exemption was inconsistent with that purpose.

Defendants then endeavored to rally support for their cause by circulating the letter to

others within the air show community, emailing a letter to AOPA, and orally

communicating with others within the industry.  Such conduct was not malicious in itself

as the FAA *invites* the public to comment on petitions for exemption.  See 14 C.F.R. §

11.85(e).

     Defendants were, however, overzealous in their crusade.  They carelessly

interjected untruths into their cause.  Had Defendants simply confined their

communications to addressing the merits of the exemption, their communications may

have been lawful.  Nevertheless, I find that the overwhelming character and content of

Defendants' communications were not defamatory; rather, such communications

concerned the purpose of the exemption and its applicability to AAHF, topics that are

open to fair comment.

Further, the FAA's initial determination that the exemption should not be renewed for policy reasons unrelated to the defamatory communications conclusively demonstrates that Defendants' contentions were, at the very least, of colorable merit. Although the FAA later reconsidered and overturned that determination, the FAA's initial rejection of the exemption and its later decision to approve the exemption on policy grounds, establishes that Defendants' contentions were not completely fallacious.

On these facts, I find that the character of the communications did not harbor the ill will, hostility, or evil intent necessary to justify an award of punitive damages.  The purpose of the communications was simply to establish a level playing field with AAHF and to preserve Defendants' business, not to maliciously harm AAHF.

**D. Plaintiff's Motion for Attorney's Fees and Nontaxable Expenses**

AAHF also moves to recover its attorneys' fees and nontaxable expenses incurred in prosecuting this action (Doc. 258).  Plaintiff contends that such fees and expenses are warranted under Fla. Stat. § 57.105 and FDUTPA.

**1.  Fla. Stat. § 57.105**

Fla. Stat. § 57.105 mandates an award of attorneys' fees to the prevailing party if the court finds that

> the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
>
> (a) Was not supported by the material facts necessary to establish the claim or defense; or
>
> (b) Would not be supported by the application of then-existing law to those material facts.

Fla. Stat. § 57.105(1)(a) & (b).

"The purpose of this statute is to discourage baseless claims, stonewall defenses and sham appeals in civil litigation by placing the price tag of attorney's fee awards on the losing parties."  Carnival Leisure Indus., Ltd. v. Holzman, 660 So. 2d 410, 412 (Fla. 4th DCA 1995) (citations omitted). However, Florida courts caution that "section 57.105

must be applied carefully to ensure that it serves the purpose for which it was intended, which is to deter frivolous pleadings." Wendy's of N.E. Fla., Inc. v. Vandergriff, 865 So. 2d 520, 523 (Fla. 1st DCA 2003); see also Yakavonis v. Dolphin Petroleum, Inc., 934 So. 2d 615, 619 (Fla. 4th DCA 2006) (quoting id.).  Further, "[a]n award of fees is not always appropriate under section 57.105 even when the party seeking fees was successful in obtaining . . . summary judgment in an action." Wendy's, 865 So. 2d at 523 (citations omitted).

Here, although AAHF was successful in obtaining summary judgment against Defendants, I find that Defendants' contentions were not so baseless, frivolous, or unsupported by the material facts as to justify an award of attorneys' fees under § 57.105.  In particular, I find that a justiciable issue existed concerning the central issue in this case - whether Defendants' communications to the FAA were privileged or entitled to qualified immunity inasmuch as such communications were arguably part of FAA "administrative proceedings."  Judge Vinson's order acknowledged the law's ambiguity on that issue:

> While Florida's appellate courts have long agreed about the existence of this privilege, they have not been so clear about its scope . . . The [Supreme Court of Florida] recognized that some protection was appropriate, lest the prospect of litigation prevent citizens from coming forward with important information . . .
>
> Several of the disputed statements in this case, while not formally a part of an administrative proceeding, could qualify as preliminary statements warranting a qualified privilege.  For example, the Buis' letters to the FAA of November 7th and 17th, as well as their comments to FAA agent Martha Farmer, were made in an attempt to bring to the FAA's attention various alleged problems with the AAHF's exemption extension request, and are thus probably eligible for a qualified privilege.

(Doc. 191:12-13) (emphases added.)  Although Judge Vinson ultimately found that several of the communications were not protected by the privilege because they were not statements preliminary to an administrative proceeding or were communicated to too wide an audience, I nevertheless find that the "privilege" defense was not so

completely lacking in merit as to entitle AAHF to attorneys' fees under § 57.105.

As to the other communications ultimately found to be defamatory, Judge Vinson implied that such statements were not so obviously defamatory as to justify characterizing Defendants' position as "frivolous, baseless, or unsupported by material facts."  Specifically, Judge Vinson found that "some of the statements, evaluated separately, might be explained as innocent mistakes." (Doc. 191:15).  I agree. Therefore, I find it improper to award AAHF attorneys' fees under § 57.105.

### 2.  FDUTPA, Fla. Stat. §§ 501.2105 & 501.211

AAHF also requests attorneys' fees and expenses under FDUTPA, Fla. Stat. §§ 501.2105 & 501.211.  Section 501.2105 states, in relevant part, that

> In any civil litigation resulting from an act or practice involving a violation of this part, . . . the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.

Fla. Stat. § 501.2105(1).  Section 501.211 states, in relevant part, that

> In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105.

Flat. Stat. § 501.211(2).

AAHF contends that under these provisions, it need not have suffered actual damages in order to obtain an award of attorney's fees and costs.  AAHF submits that such awards are permitted solely on the basis that Defendant violated FDUTPA.

The plain language of FDUTPA's provisions for attorney's fees and costs is ambiguous.  While § 501.2105 permits a "prevailing party" to recover attorney's fees and costs, § 501.211(2) arguably requires a plaintiff to have "suffered a loss" before entitling it to actual damages, attorney's fees, and costs.  Thus, the first question is whether a mere violation of FDUTPA without a showing of loss permits a plaintiff to recover attorneys' fees and costs under FDUTPA, or whether the plaintiff must first have suffered a loss as a condition precedent to invoking FDUTPA's fee-shifting provisions. If a plaintiff is not required to have suffered a loss before entitling it to attorney's fees

and costs under FDUTPA, the second question is whether a plaintiff like AAHF, which is awarded only nominal damages, even qualifies as a "prevailing party" under § 501.2105.  Finally, assuming that AAHF does qualify as a prevailing party under § 501.2105, is it still proper to award AAHF attorneys' fees and costs under FDUTPA's permissive and discretionary language?

### a. Established Principles

In assessing whether attorneys' fees and costs are warranted in this case, I am guided by several established legal principles.  First, "statutory authorization for attorney fees is to be strictly construed."  Sarkis v. Allstate Ins. Co., 863 So. 2d 210, 223 (Fla. 2003).  Second, the party requesting attorney's fees bears the burden of proving entitlement to such fees.  Salisbury v. Speilvogel, 451 So. 2d 974, 975 (Fla. 4th DCA 1984) (citing United Servs. Auto Ass'n v. Kiibler, 364 So. 2d 57 (Fla. 3d DCA 1978)).  Third, in determining which party is the prevailing party, "deference is owed a trial court's discretion."  Hutchinson v. Hutchinson, 687 So. 2d 912, 913 (Fla. 4th DCA 1997).  Finally, even if a court finds that a party has "prevailed," a trial court is vested with discretion to award or deny fees and costs where a statute is written in permissive rather than mandatory terms.  See Canup v. Chipman-Union, Inc., 123 F.3d 1440, 1442 (11th Cir. 1997) (statute's use of permissive language ("may grant") when discussing attorney fees but mandatory language ("shall not award") when discussing other forms of relief is "telling: had Congress wanted to require attorney fee awards, it could have done so when it drafted other, mandatory language regarding remedies.").  In light of these principles, I next consider the applicable case law.

### b. Showing of "Loss"

The most recent opinion tangentially addressing the question of whether a plaintiff must first have "suffered a loss" before entitling it to attorney's fees and costs under FDUTPA is Rollins, Inc. v. Butland, 2006 WL 3686484 (Fla. 2d DCA 2006).  Rollins held that a plaintiff asserting a consumer claim for damages must first suffer actual injury before it has any claim for damages under FDUTPA.  The Rollins court stated that "a consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  Id. at *5

(citations omitted) (emphasis added); see also Marino v. Home Depot, U.S.A., Inc.,
2007 U.S. Dist. LEXIS 5094, *22 (S.D. Fla. 2007) (citations omitted).  Although the
Rollins court did not address the issue of attorney's fees and costs, in analyzing the
"predominance" element required for class certification in that case, the court
emphasized that a plaintiff must suffer actual loss before a claim for damages, *nominal
or otherwise*, is viable under FDUTPA:

> The members of the putative class who experienced no actual
> loss have no claim for damages under FDUTPA . . . FDUTPA
> does not provide for the recovery of nominal damages,
> speculative losses, or compensation for subjective feelings of
> disappointment.

Id. at *9 (citations omitted) (emphasis added).

Similarly, in Hansom Hams Inc. v. HBH Franchise Co., LLC, 2004 U.S. Dist.
LEXIS 29636 (S.D. Fla. 2004), the court *dismissed* the plaintiff's FDUTPA claim *with
prejudice* because it "failed to show that it suffered any damages as a result of
Defendant's purportedly 'unfair' conduct" and "damages are a necessary element of a
FDUTPA claim seeking legal (as opposed to equitable) relief."  Id. at *29.   The court
stated that "[i]n the absence of actual damages attributable to a FDUTPA violation,
Plaintiff's claim must be dismissed."  Id. (citing Haun v. Don Mealy Imports, Inc., 285 F.
Supp. 2d 1297, 1307 (M.D. Fla. 2003).

Although Judge Vinson found Defendants liable on Plaintiff's FDUTPA claim,
Judge Vinson's opinion does not address the issue of loss or damages because that
issue was not before him in this bifurcated proceeding.  Having examined the evidence
as it relates to loss and damages and having found that Plaintiff suffered no actual loss,
it is questionable under Rollins and Hansom Hams whether Plaintiff is entitled to *any*
reimbursement under FDUTPA, whether in the form of nominal damages, attorney's
fees, or costs.[7]

---

[7]Plaintiff is still entitled to nominal damages in this case, however, under its
common law defamation claim.

### c. "Prevailing Party"

Even assuming that FDUTPA does not demand a showing of loss before attorney's fees and expenses may be awarded, FDUTPA does require that a Plaintiff be the "prevailing party."  § 501.2105(1).  Plaintiff cites two authorities in support of its contention that it has prevailed in this litigation.  See Airflo A/C Heating, Inc. v. Pagan, 929 So. 2d 739, 742 (Fla. 2d DCA 2006) (although Airflo failed to prove its damages, Airflo was the "prevailing party" and entitled to recover its attorneys' fees under section 501.2105(1) "because it filed a valid complaint for injunctive relief pursuant to the [Florida Deceptive and Unfair Trade Practices Act], which was granted"); In re Samuels, 176 B.R. 616, 628 (Bankr. M.D. Fla. 1994) (complainant who suffered no damages was awarded attorney's fees because defendant "did act in violation of the Florida Deceptive and Unfair Trade Practices Act" when she engaged in the unauthorized practice of law).

I am unpersuaded by the Airflo and Samuels decisions.  Although the precise holding in Airflo is ambiguous, the court's characterization of Airflo as the "prevailing party" arguably rested on the injunctive relief granted Airflo by the trial court.[8]  Airflo, 929 So. 2d at 742.  In Samuels, the court awarded attorney's fees to the plaintiff "because [the defendant] did act in violation of [FDUTPA]."  In re Samuels, 176 B.R. at 628. However, in Samuels, as in Airflo, the court also awarded the plaintiff injunctive relief. Id.

Although damages were nonexistent in Airflo and Samuels, the courts in those cases nevertheless determined that defendants violated FDUTPA and awarded injunctive relief.  Here, unlike Airflo and Samuels, AAHF did not request injunctive relief nor was injunctive relief granted.  Although Judge Vinson found that Defendants

---

[8]The Airflow court stated that

> Because  Airflow  filed  a  valid  complaint  for  injunctive  relief pursuant  to  the  Act,  which  was  granted,  Airflow  is  the  prevailing party  and,  accordingly,  is  entitled  to  attorney's  fees  pursuant  to section 501.2105(1).

Airflow, 929 So. 2d at 742.

violated FDUTPA, AAHF is entitled to nominal damages only because injury has not been demonstrated.  Thus, the only true relief obtained by AAHF in this case was a determination that Defendants violated FDUTPA and a consolation prize of purely nominal damages.

###### d. Discretion

While a determination of liability and a sizeable award of nominal damages in AAHF's favor may still qualify it as a "prevailing party," my inquiry into the propriety of awarding attorneys' fees and expenses is not concluded.  FDUTPA does not mandate an award of attorney's fees and expenses to the prevailing party; rather, its language is discretionary.  See Stewart v. Town of Zolfo Springs, 1998 U.S. Dist. LEXIS 20914, *10 (M.D. Fla. 1998) ("This Court finds that being a prevailing party does not automatically entitle the Defendant to attorney's fees and costs.  According to the plain language of the statute, the decision to award attorney's fees and costs is discretionary.") The words "may receive" and "may recover" attorney's fees and costs in §§ 501.2105(1) and 501.211(2) are indicative of such discretion.  The discretionary nature of the statute is particularly apparent because the mandatory term "shall" is incorporated in the subsections immediately following § 501.2105(1).  See § 501.2105(2) ("shall submit"); § 501.2105(4) ("shall become"); see also Canup v. Chipman-Union, Inc., 123 F.3d at 1442 (statute's use of permissive language ("may grant") when discussing attorney fees but mandatory language ("shall not award") when discussing other forms of relief is "telling.")

In this case, I find it inappropriate to award AAHF attorney's fees and costs where it has suffered no injury and has obtained only nominal damages.  I further find that the sizeable amount of the nominal damages award in this case provides adequate redress to Plaintiff.  Also relevant to my determination that an award of attorney's fees and costs is improper is that Plaintiff did not seek or obtain injunctive relief, distinguishing this case from Airflo and Samuels.

A court's decision to grant or deny an injunction is a significant factor in assessing the propriety of awarding attorney's fees and costs under a discretionary statute where injury or loss has not been demonstrated.  The law is clear that an

injunction is "an extraordinary and drastic remedy," the "sine qua non" of which is "actual, imminent, and irreparable injury." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (discussing preliminary injunctions); Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990) (citations omitted); Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). Implicit, then, in a trial court's decision to grant injunctive relief is usually a finding that the moving party is likely to suffer actual, imminent, and irreparable injury if the injunction were not granted. Accordingly, although injury and damages were ultimately found to be non-existent in Airflow and Samuels, those courts most likely determined that plaintiffs suffered or were likely to suffer injury that was "imminent" and "irreparable" at the time the injunctions were granted.

To trivialize the significance of injunctive relief in determining whether a party is entitled to attorney's fees and costs under FDUTPA, particularly in cases where only nominal damages have been awarded, is error. Consistent with this observation, the Eleventh Circuit has discussed the relationship between injunctions, nominal damages, and prevailing party status:

> [w]e have previously noted that obtaining an injunction is a victory 'different in kind' from a victory that obtains only nominal damages . . . This is because nominal damages do not require a showing of actual injury while '[a]n injunction is appropriate if the possibility of future harm to the plaintiff arising out of the behavior plaintiff seeks to enjoin is purely speculative . . . A person who obtains an injunction, which does require a showing of injury in fact, should thus ordinarily be entitled to prevailing party status as a matter of course.

Virdi v. Dekalb County Sch. Dist., 2007 U.S. App. LEXIS 2564, *11-*12 (11th Cir. 2007) (emphasis added) (interpreting "prevailing party" under 42 U.S.C. § 1988).

The injunctions that were granted in Airflow and Samuels should therefore have significantly impacted the courts' decisions to award attorneys' fees and costs. In this case, however, where only nominal damages have been awarded, a different outcome is justified. In Farrar v. Hobby, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992), the United States Supreme Court, in interpreting a plaintiff's entitlement to attorneys'

fees under 42 U.S.C. § 1988, stated that

> In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all.   A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his 'absolute' right to procedural due process through enforcement of a judgment against the defendant . . . In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury . . . Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action 'must always be designed to *compensate injuries* caused by the constitutional deprivation . . . When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, . . . the only reasonable fee is usually no fee at all . . . fee awards under § 1988 were never intended to 'produce windfalls to attorneys, . . .'

506 U.S. at 115 (emphases added.)

I find no basis to depart from this reasoning simply because this case arises under FDUTPA.  Having considered the requirement that a statutory authorization for attorney's fees and costs be strictly construed; AAHF's burden to prove entitlement to attorney's fees and expenses; the permissive nature of FDUTPA's fee-shifting provisions; and the merits of AAHF's case, I find that AAHF is not entitled to an award of attorney's fees and costs under §§ 501.2105(1) and 501.211(2).

**E.  Plaintiff's Motion to Strike Financial Statements of Defendants**

AAHF has moved to strike the financial statements of Defendants.  The statements were filed under seal after the bench trial.  AAHF contends that such documents were not disclosed to it during the case; were not part of the Defendants' exhibit list or offered as exhibits during trial; are untimely; and are inadmissible hearsay (Doc. 287).

The financial statements were submitted as evidence of Defendants' financial status for the purpose of determining an appropriate award of punitive damages.

However, because I find that AAHF is not entitled to an award of punitive damages, its request to strike the financial statements is moot.  Accordingly, the documents shall remain in the record but have not been considered as evidence by the Court.

### III.  CONCLUSION

1.  The clerk shall enter judgment in favor of Plaintiff in the amount of $40,000.

2.  Plaintiff's Motion for Attorney's Fees and Nontaxable Expenses (Doc. 258) is **denied**.

3.  Plaintiff's Motion to Strike Financial Statements of Defendants (Doc. 287) is **denied as moot**.

4.  The clerk shall close the file.

**ORDERED** on March 28, 2007.

/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**